**Thomas A. Ped, OSB #953767**
tped@williamskastner.com
**S. Ward Greene, OSB #774313**
wgreene@williamskastner.com
WILLIAMS KASTNER GREENE & MARKLEY
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Phone: (503) 228-7967
Fax: (503) 222-7261
Attorneys for Plaintiff Killer Burger, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **KILLER BURGER, INC.,** an Oregon corporation, | Case No. _____ |
| Plaintiff, | MEMORANDUM IN SUPPORT OF KILLER BURGER, INC.'S MOTION FOR TEMPORARY RESTRAINING AND PRELIMINARY INJUNCTION |
| v. | |
| **ROCK AND ROLL CHILI PIT, INC.,** an Oregon corporation; **MARK MCCRARY** and **ROBIN MCCRARY,** husband and wife, | |
| Defendants. | |

Page i -　MEMORANDUM IN SUPPORT OF KILLER BURGER, INC.'S MOTION FOR TEMPORARY RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

FACTS .........................................................................................................................2

POINTS AND AUTHORITIES ....................................................................................7

    1.  Killer Burger Is Likely To Succeed On the Merits ...........................................8

        A.  Killer Burger Has a Protected Interest in the Marks ......................................8

        B.  Defendants' Actions Create a Likelihood of Confusion............................. 10

               The Marks Are Strong ........................................................................... 11

               The Marked Goods are Related to the Infringing Goods........................ 11

               The Degree of Consumer Care is Low, Increasing the Likelihood of
               Confusion .............................................................................................. 12

               The Marks are Identical – Not Just Similar ........................................... 12

               Killer Burger and RRCP Use the Same Marketing Channels................. 12

               There is Actual Consumer Confusion and Intent to Infringe.................. 13

        C.  Mark McCrary Is Violating the "Nondisclosure" Provisions
            of the Shareholder Agreement ..................................................... 13

    2.  Killer Burger Is Likely to Suffer Irreparable Harm without Relief....................... 15

    3.  The Balance of Equities Favors Killer Burger ...................................... 16

    4.  An Injunction is in the Public Interest .................................................. 17

    CONCLUSION ....................................................................................... 18

Page ii -   MEMORANDUM IN SUPPORT OF KILLER
             BURGER, INC.'S MOTION FOR TEMPORARY
             RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adidas America, Inc. v. Skechers USA, Inc.*,
149 F.Supp.3d 1222, 1248 (D. Or. 2016) ...................................................................15, 16

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .........................................................................................8

*Am. Rena Int'l Corp. v. Sis–Joyce Int'l Co.*,
534 Fed.Appx. 633 (9th Cir.2013) ................................................................................17

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ....................................................................................10, 11

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
174 F.3d 1036 (9th Cir. 1999) ...................................................................................10, 12

*Cadence Design Sys. v. Avant! Corp.*,
125 F.3d 824 (9th Cir. 1997) ..........................................................................................17

*Clear Channel Outdoor, Inc. v. City of Los Angeles*,
340 F.3d 810 (9th Cir. 2003) ...........................................................................................8

*CytoSport, Inc. v. Vital Pharm., Inc.*,
617 F.Supp.2d 1051 (ED Cal 2009) *aff'd*, 349 Fed.Appx. 288 (9th Cir. 2009) ...................16

*Entrepreneur Media, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002) .........................................................................................11

*Herb Reed Enterprises, LLC v. Florida Entertainment Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) .........................................................................................15

*Internet Specialties W., Inc. v. Milon–DiGiorgio Enterprises, Inc.*,
559 F.3d 985 (9th Cir.2009) ...........................................................................................17

*Kos Pharm., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir.2004) ............................................................................................17

*Los Angeles Unified School Dist. v. United States Dist. Court for Cent. Dist.*,
650 F.2d 1004 (9th Cir., 1981) (Ferguson, J., dissenting)......................................................8

Page iii - MEMORANDUM IN SUPPORT OF KILLER
BURGER, INC.'S MOTION FOR TEMPORARY
RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

*Mattel Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ............................................................................10

*POM Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (2014) ...........................................................8, 9, 10, 11, 12, 13

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir.2012) ...........................................................................11

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) ............................................................................8

*Starbucks Corp. v. Heller*,
    No. CV 14-01383 MMM...................................................................................17

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ..........................................................................16

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) ............................................................................10

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 US 763 (1992) ..............................................................................................9

*Warner Bros. Entm't v. Glob. Asylum, Inc.*,
    No. CV 12–9547 PSG CWX, 2012 WL 6951315 (C.D.Cal. Dec. 10, 2012).
    *aff'd sub nom. Warner Bros. Entm't, Inc. v. Glob. Asylum, Inc*., 544
    Fed.Appx. 683 (9th Cir.2013) ..........................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................7, 8

## FEDERAL STATUTES

15 U.S.C. § 1114(1)..............................................................................................8

15 U.S.C. § 1127 ...................................................................................................9

MEMORANDUM IN SUPPORT OF KILLER
BURGER, INC.'S MOTION FOR TEMPORARY
RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

## INTRODUCTION

> "[Mark McCrary] designed it for his previous burger place. He brought it with him to his new burger place. It's not Killer. It's Rock and Roll. It's EPIC."

<div align="right">Facebook Post by Robin McCrary, March 25, 2017</div>

This is a trademark infringement case in which the infringer actually admits to having taken confidential recipes and trademarked names of burgers from his prior company and using them for the benefit of his new company. The prior company, plaintiff Killer Burger, Inc., is entitled to an order requiring him to stop.

Mark McCrary, ex-owner of Killer Burger is stealing Killer Burger recipes and distinctive burger names (the "Epic" and the "Black Molly") in order to promote a new rival restaurant operated by co-defendant Rock and Roll Chili Pit, Inc. His wife, Robin McCrary, has taken the lead in ripping off Killer Burger's ideas, goodwill, and distinctive trademarks through numerous Facebook advertisements and posts. The posts trade on the consumer branding and goodwill that Killer Burger has developed over many years of concerted marketing efforts, good service, and great food. The posts tend to confuse consumers as to the origin of the burgers in question, are prohibited by federal and state law, and are depriving Killer Burger of its right to control its own brand, image, and products.

Defendants' own words and actions establish clear violations of trademark laws and also a contractual confidentiality agreement that binds Mr. McCrary. The violations are causing irreparable harm to Killer Burger. Killer Burger is entitled to an immediate order precluding further harm while the claims in its Complaint are adjudicated.

Page 1 -    MEMORANDUM IN SUPPORT OF KILLER
           BURGER, INC.'S MOTION FOR TEMPORARY
           RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

## FACTS

Killer Burger was founded in Portland by Thomas ("TJ") Southard and Mark McCrary in 2010.  Its restaurants feature unique hamburgers with distinctive qualities presented in a "hip" atmosphere.  The setting is casual, with rock and roll music playing in the background, and the food is served in baskets.  The business has expanded to ten locations throughout Oregon and Washington.  Killer Burger is the most popular burger restaurant in Portland, Oregon.  In 2014, readers of *The Oregonian* voted Killer Burger as having the "Best Burger" in the Portland area.  Killer Burger likewise won "Best Burger" in 2015 and 2017 following reader surveys at portlandfoodanddrink.com.  The restaurant's popularity has continued to grow, and there are now ten Killer Burger restaurants in Oregon and Washington.  Declaration of Thomas J. Southard, ¶2 ("Southard Dec.").

In 2016, Killer Burger bought out McCrary's shares, terminating McCrary's relationship with the company.  McCrary, however, remains bound by the nondisclosure provisions of the previous Shareholders' Agreement.  *Id.* at ¶3.

McCrary and his wife, Robin McCrary, subsequently opened a competing restaurant, defendant Rock and Roll Chili Pit, Inc., ("RRCP") two blocks down the street from Killer Burger's flagship store in Portland.  According to the *Willamette Week*, the similarities between Killer Burger's business and defendants' new store are "suspiciously hilarious," including that RRCP serves a dish using peanut-butter-fried-pickles "smothered in taupe-colored nut paste" with "the approximate consistency of caulk."  These are the exact qualities inherent in Killer Burger's unique and confidential peanut-butter sauce.  Such a dish is clearly derivative of Killer Burger's peanut-butter-pickle-bacon burger.  *Id.* at ¶4.

Page 2 -    MEMORANDUM IN SUPPORT OF KILLER
              BURGER, INC.'S MOTION FOR TEMPORARY
              RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

Killer Burger has a rotating menu which features several different burgers; this drives demand by making popular items available for only a limited time (like McDonald's McRib sandwiches).  Two specific burgers are at issue in this suit: the "Epic," which includes pulled pork, bacon, and coleslaw, and the "Black Molly," named after Mr. Southard's dog, which includes a smokey house sauce, grilled onions and house-brined green chilies.  Killer Burger temporarily removed these two burgers from its menu in early March, 2017, and intends to bring them back on September 1, 2017.  *Id.* at ¶5.

Within a few weeks after Killer Burger took the "Epic" and the "Black Molly" off of its menu, RRCP added the two burgers to its own menu.  The RRCP burgers have the same names and the same ingredients as the Epic and Black Molly hamburgers served at Killer Burger.  They also retail for a similar price: $8 - $12 per burger.  *Id.* at ¶6.

On March 25, Robin McCrary posted, and RRCP re-posted that the "Epic" burger, which was no longer available at Killer Burger, would be sold at the new RRCP, and that Mark McCrary had "designed it" and "brought it with him," although it was not "Killer."  The post had a video of Mr. McCrary biting into a burger:

Page 3 -    MEMORANDUM IN SUPPORT OF KILLER
           BURGER, INC.'S MOTION FOR TEMPORARY
           RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1



*Id.* at ¶7.  On June 5, RRCP again posted that you could only get the EPIC at RRCP:



*Id.* Only three weeks ago, on July 14, RRCP posted on its Facebook page that it was selling

both the Black Molly and the Epic burgers:

Page 4 -    MEMORANDUM IN SUPPORT OF KILLER
            BURGER, INC.'S MOTION FOR TEMPORARY
            RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1



*Id.* Customers responding to the post noted that the Black Molly was "back" (presumably, "back from having left Killer Burger"):



*Id.*

The Killer Burger restaurants appeal to a varied market, including lunchtime crowds, families, college students, dinner time customers, and late-night clientele. RRCP markets to the same demographic. Customer comments included in a Marketing Analysis and Recommendations report prepared in May 2016 (the "Marketing Report") reveal a loyal following who consider Killer Burger to be a culture and experience as much as a place to eat. The restaurants and burgers are promoted through in-house and out-sourced marketing efforts including print media, online, signage, youth athletic sponsorships, and promotions, with a

<table>
<tr><td>Page 5 -</td><td>MEMORANDUM IN SUPPORT OF KILLER<br>BURGER, INC.'S MOTION FOR TEMPORARY<br>RESTRAINING AND PRELIMINARY INJUNCTION</td><td>**Williams Kastner Greene & Markley**<br>1515 SW Fifth Avenue, Suite 600<br>Portland, OR 97201-5449<br>Telephone: (503) 228-7967 • Fax (503) 222-7261</td></tr>
</table>

heavy emphasis on social media.  Over the last two years, Killer Burger has spent an average of $177,000.00 per year on these marketing endeavors.  *Id.* at ¶8.

This marketing, and the quality of the burgers themselves, has led each of Killer Burger's burgers, including the "Epic" and the "Black Molly," to develop loyal customer followings.  The burgers also garner a fair amount of publicity through print journalism pieces and internet postings and reviews.  For example, Yelp.com hosts numerous reviews dedicated not just to Killer Burger, but specifically dedicated to the "Epic" and "Black Molly" burgers.  These burgers are so tied in to Killer Burger and the Portland "scene" in general that reviews of them even appear on non-food websites such as apartments.com.  *Id.* at ¶9.

The Marketing Report included a "Social Media Fan Survey" which listed comments made by people from various social media websites.  The vast majority of the comments were positive regarding Killer Burger.  One such comment said:  "Just wish the Black Molly could be made "Girlie" size.  Must be a technical issue.  Love KB though.  Glad to have you in Sellwood."  Another comment said:  "Love the Jose Mendoza, barnyard and epic…And the classic rocks as well."  *Id.* at ¶10.

Some negative comments in the Marketing Report, however, were clearly made by the McCrarys or those associated with them, with many comments directed at TJ Southard in particular.  The comments included as follows:

> "Everything was wonderful until you got rid of the McCrarys and Anna and the others left.  I will NEVER come back, and I tell all my friends what went down.  Not very Christian behavior TJ!"

> "F[***] you TJ."

Page 6 -  MEMORANDUM IN SUPPORT OF KILLER
BURGER, INC.'S MOTION FOR TEMPORARY
RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

"I think it is crap what you did to the McCreary's [sic] and I hope that you suffer the worst that karma has to offer.  When they open a new burger restaurant they will run you out of the business.  Good luck!"

"Tell TJ he is a puke."

"This place was amazing because of the Killer owners and Killer staff but since you got rid of all of them it's just a shitty mess!  Boycotting you forever!  F[***] YOU TJ!"

*Id.* at ¶11.  Most customers do not know Mr. Southard, or his nickname ("TJ"), and are not aware of his ownership interest in Killer Burger.  The above negative comments could only have been made by people with inside information regarding Killer Burger, which would be the McCrarys themselves, their family members or their associates.  *Id.*

Comments by the McCrarys on social media leave no doubt they are trying to profit off of Killer Burger's marks, recipes, business, goodwill and clientele.  One such comment stated: "They're the founders of Portland's beloved Killer Burger, and they've opened a place – the Rock and Roll Chili Pit, a new burgers, beers and live music venue located just a block-and-a-half north of their former business."  When a person logs onto RRCP's Facebook page, Facebook automatically populates the "people also like" portion with a link to Killer Burger. *Id.* at ¶12.

## POINTS AND AUTHORITIES

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A preliminary injunction is not a preliminary adjudication on the merits.  Rather it is a device for

Page 7 -   MEMORANDUM IN SUPPORT OF KILLER BURGER, INC.'S MOTION FOR TEMPORARY RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

preserving the status quo and preventing irreparable loss of rights prior to judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

"[A] stronger showing of one [*Winter*] element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" *Id.* at 1132 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). A request for a temporary restraining order is evaluated under the same standard as a request for a preliminary injunction. *Los Angeles Unified School Dist. v. United States Dist. Court for Cent. Dist.*, 650 F.2d 1004, 1007-1008 (9th Cir., 1981) (Ferguson, J., dissenting).

Here, all four *Winter* elements are present. The Court should issue the requested injunction.

## 1.  Killer Burger Is Likely To Succeed On the Merits

Killer Burger's primary claim is for relief under the Lanham Act for the trademark infringement carried on by Defendants. To prevail, Killer Burger must demonstrate that (1) it has a protected interest in the trademark, and (2) there is a likelihood of consumer confusion caused by the infringing activities. 15 U.S.C. §1114(1); *POM Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (2014).

### A.  Killer Burger Has a Protected Interest in the Marks

Killer Burger has not registered its "Epic" or "Black Molly" trademarks. However, unregistered trademarks are subject to protection under §43(a) of the Lanham Act so long as

they qualify for registration under §2 of that Act.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505

US 763, 768 (1992).  Thus, any name used to "identify and distinguish his or her goods,

including a unique product, from those manufactured or sold by others and to indicate the

source of the goods" is a trademark.  15 U.S.C. § 1127.  Killer Burger uses the "Epic" name to

designate and refer to a specific burger product, one that includes pulled pork, bacon, and

coleslaw, and also use the name in marketing alone to designate the burger as being one created

and marketed by Killer Burger.  Southard Dec. ¶13.  The name "Black Molly" similarly refers

to a specific product, one that includes smokey house sauce, grilled onions, and house-brined

roasted green chilies and is similarly used in marketing and distinguishing the product from

other products on the market.  *Id.*

        A mark must also be distinctive.  Marks are "inherently distinctive," and thus

automatically entitled to protection, when they are suggestive, arbitrary or fanciful.  *Two Pesos,

Inc.*, 505 US at 768-769.  Here, the "Black Molly" mark is arbitrary, fanciful, and unique.  The

phrase has nothing to do with the ingredients in the burger, or any quality of the burger.  The

words, the name of Mr. Southard's dog, are only associated with this particular combination of

ingredients, or the idea of a hamburger at all, through Killer Burger's efforts.  The "Black

Molly" is automatically entitled to protection.  The "Epic Burger" mark is less strong, but it is

still "suggestive" rather than "descriptive" because it does not define a straightforward quality

of the burger but rather conveys an impression of the goods or the consumer's potential

experience of those goods, that requires the consumer to use her imagination in understanding

the mark's significance.  *POM Wonderful LLC*, 775 F.3d at 1126.

Page 9 -    MEMORANDUM IN SUPPORT OF KILLER
            BURGER, INC.'S MOTION FOR TEMPORARY
            RESTRAINING AND PRELIMINARY INJUNCTION

                                          **Williams Kastner Greene & Markley**
                                          1515 SW Fifth Avenue, Suite 600
                                          Portland, OR 97201-5449
                                          Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

Killer Burger has a protected interest in the marks it uses to identify these unique burgers.

### B. Defendants' Actions Create a Likelihood of Confusion

Consumer confusion is determined by whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the infringing product and to associate that product with Killer Burger.  *Pom Wonderful LLC,* 775 F.3d at 1125.  This "likelihood-of-confusion" analysis is guided by eight factors in the ninth circuit.  They are called the eight *Sleekcraft* factors.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n. 19 (9th Cir. 2003).    The eight factors include (1) the strength of the protected mark; (2) the proximity and relatedness of the goods; (3) the type of goods and the degree of consumer care; (4) the similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) the likelihood of product expansion.  *POM Wonderful LLC*, 775 F.3d at 1125.

Because the factors are "fluid," a "plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).  Here, however, there is evidence to support a finding that every single applicable[1] factor weighs in Killer Burger's favor.

---

[1] Where, as here, the two companies already compete to a significant extent, the eighth *Sleekcraft* factor, likelihood of expansion in product lines, factor is "relatively unimportant." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999).

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

### The Marks are Strong

A mark is stronger the more distinctive it is, with the strongest marks being arbitrary or fanciful, followed by marks which are "suggestive," then "descriptive" marks.  The weakest marks are generic.  *POM  Wonderful LLC*, 775 F.3d at 1126.  Here, the "Black Molly" mark is arbitrary, fanciful, and unique.  It literally has nothing to do with the ingredients in the burger, and the words are only associated with this particular combination of ingredients through Killer Burger's efforts.  The "Black Molly" mark is very strong.  The "Epic Burger" mark is less strong, but it is still "suggestive" rather than "descriptive" because it does not define a straightforward quality of the burger but rather conveys an impression of the goods that requires the consumer to use her imagination in understanding the mark's significance.  *Id.*  A "suggestive" mark is still weak, but is strengthened when it has achieved significant marketplace recognition.  *Id.*  The Epic Burger mark is strongly established by Killer Burger in the Pacific Northwest.  Killer Burger has extensively advertised the Epic Burger, it has been used exclusively in the Pacific Northwest since 2010 and it is recognized by the public as associated with Killer Burger.  *Id.*, Southard Dec. ¶¶8-10, *see also Entrepreneur Media, Inc. v. Smith.*, 279 F.3d 1135, 1144 (9th Cir. 2002) (explaining strengthening factors).

### The Marked Goods are Related to the Infringing Goods

Goods are related if they are similar in use and function.  *Sleekcraft*, 599 F.2d at 350.  "Related goods (or services) are those 'which would be reasonably thought by the buying public to come from the same source if sold under the same mark.'" *Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 1190, 1212 (9th Cir.2012) (quoting *Sleekcraft,* 599 F.2d at 348 n.

Page 11 -   MEMORANDUM IN SUPPORT OF KILLER
            BURGER, INC.'S MOTION FOR TEMPORARY
            RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

10).  Here, both the marked goods and the infringing goods are hamburgers, with the same

ingredients, and are sold a few blocks away from each other.  The goods are clearly related.

### The Degree of Consumer Care is Low, Increasing the Likelihood of Confusion

Consumers of low-cost single use goods are expected to use less care when selecting

such goods, which makes confusion more likely.  *Brookfield Communications, Inc. v. West*

*Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999).  Burgers are just this type of

good, retailing for between $8.00 and $12.00, which makes this factor weigh in favor of Killer

Burger as well.

### The Marks Are Identical – Not Just Similar

The protected mark and the allegedly infringing mark are exactly the same as well:

"Epic Burger" and "Black Molly Burger."  The sound and meaning of the marks are identical.

*POM Wonderful LLC*, 775 F.3d at 1129-1130 (even where there are visual dissimilarities

between marks, sound and meaning coincidence put this factor in favor of the owner of the

protected mark).  This factor also weighs in favor of Killer Burger.

### Killer Burger and RRCP Use the Same Marketing Channels

This factor also weighs in favor of Killer Burger.  The genuine burgers and the

infringing burgers are marketed through the same channels, namely, through Facebook and

other online social media outlets.  Southard Dec. ¶¶7, 8, 12.  Notably, these social media outlets

enhance the likelihood of confusion due to their algorithms which link similar services

together.  For example, on RRCP's Facebook page, Facebook automatically populates the

"people also like" portion with a link to Killer Burger.  *Id.* at ¶12.  This heightens the likelihood

of consumer confusion where the exact same product, with the same distinctive name, is

Page 12 -  MEMORANDUM IN SUPPORT OF KILLER
          BURGER, INC.'S MOTION FOR TEMPORARY
          RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

offered by both companies, one of whom (RRCP) claims that the product was "brought . . . with [McCrary] to his new burger place." *Id.* at ¶7.  The markets are also geographically similar.  They also involve similar groups and circles of persons through social media, and target similar demographics. *Id.* at 8.

### There is Actual Consumer Confusion and Intent to Infringe

Most cases of infringement do not have evidence of actual confusion or intent at the preliminary injunction stage.  Recognizing this, the Ninth Circuit has held that the lack of such evidence is fairly unimportant and at most makes this factor neutral.  *POM Wonderful LLC*, 775 F.3d at 1131.

Here, however, there is evidence of consumer confusion.  Southard Dec. ¶7.

There is also evidence that the infringement is intentional.  The advertisements posted by defendant McCrary are directed at Killer Burger by name.  *Id.* at ¶7, 12.  McCrary had direct knowledge of these products from his time as co-owner of Killer Burger.  *Id.* at ¶14, 15.  The advertisements began to be published just after Killer Burger rotated these two burgers off of its menu.  *Id.* at ¶ 5, 6, 7.  Defendants obviously were trying to take advantage of this commercial strategy.

### C.  Mr. McCrary Is Violating the "Nondisclosure" Provisions of the Shareholder Agreement

Killer Burger is also likely to prevail on its breach of contract claim relating to Mr. McCrary's agreement not to disclose confidential information he obtained during his time as a shareholder.

Under the shareholder agreement, Confidential Information means:

Page 13 -  MEMORANDUM IN SUPPORT OF KILLER
BURGER, INC.'S MOTION FOR TEMPORARY
RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

"information related to the Company or its business that is disclosed to or accessed by a Shareholder if (a) . . . or (b) the information is known or should have been known by the Shareholder as being treated by the Company or the disclosing person as confidential."

<div align="right">Southard Dec., Ex. 1, Page 5</div>

The Shareholder Agreement, which continues to bind Mr. McCrary, also provides that:

"the Shareholder will not use Confidential Information for any purpose without the Company's specific prior written authorization, except the Shareholder may use Confidential Information to promote and effect the purposes of the Company"

<div align="right">*Id.* at Ex. 1, Page 2.</div>

The recipes for the "Black Molly" burger, the "Epic" burger, and the peanut-butter sauce were all treated by Killer Burger as confidential during McCrary's time as a shareholder. *Id.* at ¶14.  They constitute Confidential Information.  RRCP is using these recipes in its current business; it is clear that it was provided this confidential information by Mr. McCrary.  *Id.* Defendants admit that Mr. McCrary took this Confidential Information to RRCP: as Robin McCrary posted, and RRCP re-posted, on March 25, 2017, Mr. McCrary "designed [the Epic burger] for his previous burger place.  He brought it with him to his new burger place."  *Id.* at ¶7.

McCrary was not provided written authorization to share the recipes for the Black Molly burger, the Epic burger, or the peanut-butter sauce with RRCP.  *Id.* at ¶15.  Nor does that sharing promote any purpose of Killer Burger – it is wholly to the benefit of RRCP.

As such, Killer Burger is likely to prevail on this claim for relief as well.

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

**2. Killer Burger Is Likely to Suffer Irreparable Harm without Relief**

"Irreparable harm" is established by a showing that, without an injunction, the mark-holder is likely to suffer harm that legal remedies cannot fix. *Herb Reed Enterprises, LLC v. Florida Entertainment Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (a court may not presume harm, but must make factual findings). "In trademark cases, although evidence of loss of control over business reputation and damage to goodwill can constitute irreparable harm, a court making a finding of irreparable harm must ground its analysis in evidence rather than conclusory assertions or speculation." *Adidas America, Inc. v. Skechers USA, Inc.*, 149 F.Supp.3d 1222, 1248 (D. Or. 2016) (internal quotations and citations omitted). Here, the harm to Killer Burger is not speculative, but real: Defendants have actually appropriated and are actively using Killer Burger's name and protected marks, and the products are continuing to be marketed and sold even today.

In *Adidas America, Inc.*, Judge Hernandez found likely irreparable harm to the plaintiff, where it had shown (1) substantial quantifiable and unquantifiable marketing investment in the mark, and (2) copying and close imitation of the mark by the defendant. *Id.* at 1249. The copying and close imitation gave rise to an inference of a loss of control over the trademarks, reputation, and goodwill: "a quintessentially irreparable injury." *Id.* Here, Killer Burger purposefully disassociated itself from Mr. McCrary and paid to redeem his stock. Southard Dec. ¶3. Mr. McCrary is now trying to re-associate himself and his new company in the public's mind with the Killer Burger brand. Killer Burger has also shown its substantial investment in time and money in promoting the "Epic" and "Black Molly" brands. Thus, just as Adidas did, Killer Burger has made a substantial investment in its protected marks, and just

Page 15 -   MEMORANDUM IN SUPPORT OF KILLER
BURGER, INC.'S MOTION FOR TEMPORARY
RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

as the infringer in *Adidas America, Inc.*, Defendants here have actually copied, and continue to copy, the marked goods. Thus, Killer Burger, like Adidas, has suffered the "quintessentially irreparable injury" of a loss of control over that investment in its business reputation.

In addition, the infringement is also causing irreparable harm to Killer Burger by interfering with Killer Burger's marketing plan to create a demand for its products through menu rotation. Menu rotation drives demand by making popular items available for only a limited time (like McDonald's McRib sandwiches). Southard Dec., ¶5. Here, because consumers are able to purchase what, to them, appears to be authentic Epic and Black Molly burgers during their absence from the Killer Burger menu, that demand management strategy is undermined. *See*, *Adidas America, Inc.*, 149 F.Supp.3d at 1249-1250, citing *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F.Supp.2d 1051, 1081 (ED Cal 2009) *aff'd*, 349 Fed.Appx. 288 (9th Cir. 2009) (undermining demand management strategies supports finding of irreparable harm). Indeed, there is evidence that consumers are actually being confused and misled as to whether the Black Molly is "back" or not when it is being marketed by RRCP. Southard Dec., ¶7.

**3. The Balance of Equities Favors Killer Burger**

A court must "balance the interests of all parties and weigh the damage to each" in determining the balance of the equities. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).

The balance of hardships here favors Killer Burger. As explained throughout this motion, Killer Burger has expended significant time and money to promote its unique brand and burgers and also to disassociate itself from Mr. McCrary. Without an injunction, Mr. McCrary can essentially free ride on Killer Burger's efforts, while at the same time interfering

Page 16 -   MEMORANDUM IN SUPPORT OF KILLER
             BURGER, INC.'S MOTION FOR TEMPORARY
             RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

with Killer Burger's branding, quality control, and strategic planning.  Defendants make many

other burgers, and can continue to sell them, if an injunction is issued, and thus the economic

impact to them would be minimal.  But more importantly, Defendants are clearly infringing

upon Killer Burger's marks, and harms resulting from the cessation of infringing activities are

excluded from the balance of equities under this element.  *Cadence Design Sys. v. Avant!*

*Corp.*, 125 F.3d 824, 829 (9th Cir. 1997).

### 4.   <u>An Injunction is in the Public Interest</u>

"A plaintiff seeking an injunction must establish that the injunction is in the public

interest." *Internet Specialties W., Inc. v. Milon–DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993

(9th Cir.2009). "[T]he most basic public interest at stake in all Lanham Act cases [is] the

interest in prevention of confusion, particularly as it affects the public interest in truth and

accuracy." *Warner Bros. Entm't v. Glob. Asylum, Inc.*, No. CV 12–9547 PSG CWX, 2012 WL

6951315, at *23 (C.D.Cal. Dec. 10, 2012). *aff'd sub nom. Warner Bros. Entm't, Inc. v. Glob.*

*Asylum, Inc.*, 544 Fed.Appx. 683 (9th Cir.2013) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369

F.3d 700, 730 (3d Cir.2004)). "An injunction that prevents consumer confusion in trademark

cases, as this injunction does, serves the public interest." *Am. Rena Int'l Corp. v. Sis–Joyce Int'l*

*Co.*, 534 Fed.Appx. 633, 636 (9th Cir.2013) (citation omitted); *Starbucks Corp. v. Heller*, No.

CV 14-01383 MMM MRWX, 2014 WL 6685662, at *9 (C.D.Cal. 2007). ("The most basic

public interest is the public's right not to be deceived or confused.") (citation and quotation

omitted).

Here, Killer Burger has made a strong showing that it is likely to succeed in proving

that Defendants are infringing upon its trademarks and confusing the public by using identical

Page 17 -   MEMORANDUM IN SUPPORT OF KILLER
            BURGER, INC.'S MOTION FOR TEMPORARY
            RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

marks.  The public interest is therefore served by an injunction which would prevent further

public confusion.

### <u>CONCLUSION</u>

Mr. McCrary is nakedly ripping off the Killer Burger name and products to promote his

rival business.  This is clearly designed to, and is likely to succeed in, confusing consumers as

to the origin of the burgers sold by the RRCP restaurant.  This court should issue a temporary

restraining order as requested, and set this case for a hearing on a preliminary injunction.

DATED, this 4th day of August, 2017.

<div style="margin-left: 40%;">

s/ S. Ward Greene
WILLIAMS KASTNER GREENE & MARKLEY
OSB #774313
(503) 228-7967
*Attorneys for Plaintiff Killer Burger, Inc.*

</div>

Page 18 -  MEMORANDUM IN SUPPORT OF KILLER
BURGER, INC.'S MOTION FOR TEMPORARY
RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO LR 7-2(b)**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 4,366 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED, this 4th day of August, 2017.

s/ S. Ward Greene
WILLIAMS KASTNER GREENE & MARKLEY
OSB #774313
(503) 228-7967
*Attorneys for Plaintiff Killer Burger, Inc.*

Page 19 -  MEMORANDUM IN SUPPORT OF KILLER
BURGER, INC.'S MOTION FOR TEMPORARY
RESTRAINING AND PRELIMINARY INJUNCTION

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6156018.1